E-FILED
Tuesday, 23 January, 2018  03:55:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 18-CV- 4016 |
| | ) | |
| ESTATE OF KEENE O. ENDERS, UNKNOWN | ) | |
| OWNERS, INCLUDING UNKNOWN HEIRS | ) | |
| AND LEGATEES OF KEENE O. ENDERS, | ) | |
| DECEASED, NON-RECORD CLAIMANTS, | ) | |
| UNKNOWN CLAIMANTS AND | ) | |
| LIENHOLDERS AGAINST THE ESTATE OF | ) | |
| KEENE O. ENDERS; UNKNOWN | ) | |
| CLAIMANTS AND LIENHOLDERS AGAINST | ) | |
| THE UNKNOWN HEIRS AND DEVISEES OF | ) | |
| KEENE O. ENDERS; WILFRED W. ENDERS, | ) | |
| DAVID K. ENDERS, PAUL BARNES AND | ) | |
| HELEN BARNES. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Now comes, UNITED STATES OF AMERICA, by and through its attorneys, John

E. Childress, United States Attorney for the Central District of Illinois, and Assistant

United States Attorney Kimberly A. Klein, and for its cause of action alleges that:

1.    This is a civil action brought pursuant to 28 U.S.C. § 1345 to foreclose the

hereinafter described mortgage or other conveyance in the nature of a mortgage

(hereinafter called "mortgage") and to join the following persons as defendants: Estate

of Keene O. Enders, Unknown Owners, Including Unknown Heirs and legatees of

Keene O. Enders, Deceased, Non-record Claimants, Unknown Claimants and
Lienholders against the Estate of Keene O. Enders; Unknown Claimants and
Lienholders against the Unknown Heirs and Devisees of Keene O. Enders; Wilfred W.
Enders, David K. Enders, Paul Barnes and Helen Barnes.

2.    Information concerning the mortgaged premises:

(A)   Legal description of mortgaged premises:

Parcel One: Lot 1, 2, 3 and 4, Except the West 25 feet of said Lot 4; Lots 9, 10, 11,
12 and 13, Except the West 25 feet of said Lot 9, all in block 7 of Lloyd, Higgins
and Trego's Addition to the original town, now Village of Orion, Henry County,
Illinois. Parcel Two: The vacated alley running east and west through said block
7 from the east line thereof to the west line of parcel one. Parcel Three: the west
half of vacated Seventh Street adjoining said block seven

PIN NO. 11-28-228-007

(B)   Common address or location of mortgaged premises:

601 11th Avenue, Orion, IL 61273

(C)   Name of present owner of the real estate:    Keene O. Enders, Deceased.

(D)   Name or names of persons, in addition to such owners, but excluding any
      non-record claimants as defined in the Illinois Mortgage Foreclosure Law,
      Chapter 735 ILCS, Section 5/15-1210, who are joined as defendants and
      whose interest in or lien on the mortgaged real estate is sought to be
      terminated: **Wilfred W. Enders, David K. Enders, sons of Keene O.
      Enders, Deceased and Paul Barnes and Helen Barnes as occupants
      of property.**

(E)   Name of defendants claimed to be personally liable for deficiency, if any:
      None

(F)   Capacity in which plaintiff brings this foreclosure: as the owner and legal
      holder of said note, mortgage and indebtedness.

2

(G) Facts in support of a shortened redemption period, if sought: There is no redemption period per 12 USCA Section 1701K.

(H) Facts in support of request for costs and expenses, if applicable:

Plaintiff has been required to incur title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage.

(I) Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.

(J) Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof:

WILFRED W. ENDERS, DAVID K. ENDERS, PAUL BARNES, HELEN BARNES, UNKNOWN OWNERS, INCLUDING UNKNOWN HEIRS AND LEGATEES OF KEENE O. ENDERS, DECEASED, NON-RECORD CLAIMANTS, UNKNOWN CLAIMANTS AND LIENHOLDERS AGAINST THE ESTATE OF KEENE O. ENDERS; UNKNOWN CLAIMANTSAND LIENHOLDERS AGAINST THE UNKNOWN HEIRS AND DEVISEES OF KEENE O. ENDERS

3.    That Keene O. Enders, widowed and not remarried, prior to the execution of a note and mortgage, per program requirements, was duly advised and counseled regarding the United States' Home Equity Conversion Mortgage ("HECM") loan program which is regulated and set forth in 24 CFR Part 206, et. seq. and all subsequent handbooks (4330.1 REV-5), mortgagee letters, etc. as set forth by the Secretary of the Department of Housing and Urban Development.   The purpose of this program is set forth in 24 CFR § 206.1, and as ". . . set out in section 255(a) of the National Housing Act, public Law 73-479, 48 STAT. 1246 (12 U.S.C. 1715z-20)"; being further regulated by

handbook 4330.01 Rev. 5 and all subsequent mortgage letters as issued and set forth by the Secretary of the Department of Housing and Urban Development.

4.      On or about August 30, 1999, Keene O. Enders, executed and delivered to the Senior Income Reverse Mortgage Corporation, an adjustable rate note (Home Equity Conversion), in the amount of $172,800.00, attached hereto as Exhibit "A", incorporated herein and made a part hereof as if fully written herein ("Note").   Under paragraph 2 of the note titled:   **Borrower's Promise to Pay:   Interest**, Keene O. Enders agreed to the following, to-wit:

> In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated August 30, 1999 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest.   All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on December 29, 2068.   Interest will be charged on unpaid principal at the rate of Six and 4200/1000 (6.40%) per year until the full amount of principal has been paid.   The interest rate may change in accordance with Paragraph 5 of this Note.   Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

5.      Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Keene O. Enders executed and delivered to Senior Income Reverse Mortgage Corporation, an adjustable rate home equity conversion mortgage, a copy of which is attached here to as Exhibit "B", incorporated herein and made a part hereof as if fully written herein ("First Mortgage").   Said Mortgage was duly recorded on August 30, 1999 Instrument No. 9908739, Henry County, Illinois.

Said real estate is within the jurisdictional limits of the Court.

6.      Also on August 30, 1999, Keene O. Enders executed and delivered to The Secretary of Housing and Urban Development, an agency of the United States of America ("United States of America"), a Second Mortgage .   Said Mortgage was recorded in the Henry County, Illinois recorder's office on August 30, 1999, Instrument No. 9908741, a copy of which is attached hereto as Exhibit "C", incorporated herein and made a part hereof as if fully written herein.

7.      Senior Income Reverse Mortgage Corporation, conveyed and assigned their interest in the Note and First Mortgage to Wendover Funding Inc. and duly recorded on August 30, 1999 Instrument No. 9908740, a copy of which is attached hereto as Exhibit "D", incorporated herein and made a part hereof as if fully written herein.

8.      Wendover Funding Inc. conveyed and assigned their interest in the Note and First Mortgage to Financial Freedom Senior Funding Corporation, duly recorded on March 28, 2005, Instrument No. 200502492, a copy of which is attached hereto as Exhibit "E", incorporated herein and made a part hereof as if fully written herein.

9.      Financial Freedom Senior Funding Corporation assigned their interest in the Note and First Mortgage to The Secretary of Housing and Urban Development, an agency of the United States of America ("United States of America").   Said assignment was recorded in the Henry County Recorder's Office on September 4, 2007, Instrument No. 200707484, attached hereto as Exhibit "F", incorporated herein and made a part.

10.     Keene O. Enders was deemed deceased on March 27, 2012.    A copy of his Certificate of Death is attached hereto as Exhibit "G", incorporated herein and made a part hereof as if fully written herein.

11.     To the best of plaintiff's knowledge, no claim has been filed in the estate in Henry County probate case No. 12-P-50.

12.     Under the Mortgage's paragraph 9 and the Note's paragraph 7, default occurred on the date of death of Keene O. Enders.    Consistent with said terms and default, full and immediate payment is due and demanded.    Said mortgage has become absolute and the United States is entitled to a foreclosure of the same and the equity of redemption therein.    A notice of Intent to Foreclose and Accelerate Mortgage Balance is attached hereto as Exhibit "H".

13.     Keene O. Enders is indebted to the United States of America, on behalf of its agency, the Department of Housing and Urban Development and there remains due the following sums to plaintiff:

| | | |
|---|---|---|
| (A) | Unpaid principal | $92,253.97 |
| (B) | Interest accrued in accordance with adjustable rate note/mortgage:    initial signing rate of 2.510% per annum and adjustable every year thereafter | $57,044.24 |
| (C) | MIP <br> Advances for tax payments and insurance set forth in 24 CFR 206.27 & 206.103, et seq. and HUD handbook 4330.1 (13-14) et seq. | $12,673.58 |

6

(D)    Service Fee
       set forth in HUD handbook 4330.1 (13-15)        $6,570.00

       TOTAL (as of February 26, 2014)                 $168,541.79

REQUEST FOR RELIEF

Plaintiff requests:

i)    A judgment to foreclose such mortgage, ordering: Amounts due and
      owing to plaintiff.

      a.    That an accounting may be taken under the direction of the court of
      the amounts due and owing to the plaintiff;

      b.    That the defendant be ordered to pay to the plaintiff before
      expiration of any redemption period (or if no redemption period, before
      a date fixed by the court) whatever sums may appear to be due upon
      the taking of such account, together with fees and costs of the
      proceedings (to the extent provided in the mortgage or by law);

      c.    That in default of such payment in accordance with the judgment,
      the mortgaged real estate be sold as directed by the court, to satisfy the
      amount due to the plaintiff as set forth in the judgment, together with
      the interest thereon at the statutory judgment rate from the date of
      judgment;

      d.    That in the event the plaintiff is a purchaser of the mortgaged real
      estate at such sale, the plaintiff may offset against the purchase price of
      such real estate the amounts due under the judgment of foreclosure and
      order confirming the sale;

      e.    That in the event of such sale and the failure of the person entitled
      thereto to redeem prior to such sale pursuant to this Article, the
      defendants made parties to the foreclosure in accordance with this
      Article, and all non-record claimants given notice of the foreclosure in
      accordance with this Article, and all persons claiming by, through or
      under them, and each and any and all of them, may be forever barred
      and foreclosed of any right, title, interest, claim, lien or right to redeem

in and to the mortgaged real estate; and

f.   That if no redemption is made prior to such sale, a deed may be issued to the purchaser thereat according to law and such purchaser be let into possession of the mortgaged real estate in accordance with 735 ILCS, Section 5/15-1701, et. seq.

ii)   An order granting a shortened redemption period, if authorized by law.

iii)   A personal judgment for a deficiency if authorized by law is not sought.

iv)   An order granting possession.

v)   An order placing the mortgagee in possession or appointing a receiver.

vi)   A judgment for fees, costs and expenses.

vii)   Enforcement of its assignment of rents derived from said real estate.

viii)   Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

<u>ADDITIONAL REQUEST FOR RELIEF</u>

Plaintiff also requests that the judgment for foreclosure or other orders entered herein provide for the following (pursuant to 735 ILCS, Section 5/15-1506(f)):

i)   Judicial sale conducted by the United States Marshal or his representative, at which the plaintiff is entitled to bid;

ii)   Title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for the preceding year which have not become due and payable as of the date of entry of the judgment of foreclosure, any special assessments upon the real estate, and easements and restrictions of record;

iii)   In the event a party to the foreclosure is a successful bidder at the sale, such party shall be allowed to offset against the purchase price to be paid for such real estate amounts due such party under the judgment of foreclosure or order confirming the sale.

8

WHEREFORE, the United States of America prays:

1.      For judgment against Estate of Keene O. Enders, Wilfred W. Enders, David K. Enders, Paul Barnes and Helen Barnes in the principal amount of $92,253.97 and interest in the amount of $57,044.24, service charge in the amount of $6,570.00 and MIP in the amount of $12,673.58 totaling $168,54179 together with interest at the rate of $2.510 per day from November 20, 2017 to the date of judgment, plus interest thereafter at the legal rate, and all costs, disbursements and expenses and advances and payments made by the plaintiff after November 20, 2017.

2.      That the Court find that said Mortgages of the United States of America are a good, valid, and subsisting lien against the real property in said mortgages, and more particularly in Exhibit "B" and Exhibit "C" herein above referenced to and as therein described.

3.      That the Court finds that the United States of America is entitled to the foreclosure of said mortgages and the equity of redemption therein.

4.      That the defendants herein named be required to set up their respective claims and liens pertaining to said real property as said real property is described in Exhibit "B" and "C", or be forever barred from hereafter asserting the same.

5.      For an order foreclosing the mortgages and equity of redemption as set forth herein and the determining of the validity of all other claims and liens against the

mortgaged premises, and subjecting the mortgaged premises to sale, free and clear of

the liens and claims of the parties to this action, for the purpose of satisfying the claim

of the United States of America.

6.     That the priority of liens against the real property be determined by the

Court, and the proceeds of the sale of said property, after proper court costs, be

distributed among the owners and holders of liens against said property in the order of

priority thereof as determined by the Court.

7.     For all further and proper relief, both legal and equitable, to which the

parties hereto may be entitled.

Respectfully submitted,
JOHN E. CHILDRESS
*United States Attorney*

s/Kimberly A, Klein, IL Bar No. 6230077
Attorney for Plaintiff
United States Attorney's Office
211 Fulton Street, Suite 400
Peoria, IL 61602
Telephone: (309) 671-7050
Fax: (309) 671-7259

E-FILED
Tuesday, 23 January, 2018  03:55:17 PM
Clerk, U.S. District Court, ILCD



# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)



FHA Case No. 132-1364585/255
132-1364585

AUGUST 30    , 1999

601 11TH AVENUE, ORION, ILLINOIS 61273

[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means
SENIOR INCOME REVERSE MORTGAGE CORPORATION

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated    AUGUST 30, 1999        ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on    DECEMBER 29      , 2068    . Interest will be charged on unpaid principal at the rate of    SIX AND 400/1000         percent (    6.4000 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at  SENIOR INCOME REVERSE MORTGAGE CORPORATION,
130 SOUTH JEFFERSON, LL #100,
CHICAGO, ILLINOIS 60661                                          , or any such other place as Lender
may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on the first day of    NOVEMBER, 1999        , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of  ONE AND 200/1000 percentage points (    1.20000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above    SIXTEEN AND 400/1000        percent (    16.40000 %).

### (E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

A

4

9908739    08/30/1999 03:07P    1 of    8
Martha S Roberts, Henry County Recorder

*2*

- - - - - - - [Space Above This Line For Recording Data] - - - - - - -

State of Illinois                                    FHA Case No.  132-1364585/235
                                                                   132-1364585

### ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  AUGUST 30, 1999                . The mortgagor is
IRENE O. ENDERS , WIDOWED AND NOT SINCE REMARRIED

whose address is   601 11TH AVENUE,
ORION, ILLINOIS 61273                                                            ("Borrower").
This Security Instrument is given to
SENIOR INCOME REVERSE MORTGAGE CORPORATION

organized and existing under the laws of   THE STATE OF ILLINOIS               , which is
130 SOUTH JEFFERSON, LL #100, CHICAGO, ILLINOIS 60661           , and whose address is

("Lender")  Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
ONE HUNDRED SEVENTY TWO THOUSAND EIGHT HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - -
(U.S. $  172,800.00          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full
debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
DECEMBER 29    , 2068    For this purpose, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in    HENRY                      County, Illinois.

00HD  11/00                                          Page 1 of 8

B

9908739    08/30/1999 03:07P    2 of   8
Martha S Roberts, Henry County Recorder

PARCEL ONE: LOT 1,2,3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4;
LOTS 9, 10, 11, 12, AND 13, EXCEPT THE WEST 25 FEET OF SAID LOT 9,
ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION TO THE
ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS.    PARCEL
TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN
FROM THE EAST LINE THEREOF TO THE WEST LINE OF PARCEL ONE.    PARCEL
THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK
SEVEN.

which has the address of  601 11TH AVENUE                      [Street]

ORION                    , ILLINOIS                61273        ("Property Address");
        [City]                   [State]           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will
defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the
debt evidenced by the Note.

2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents,
flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of
payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the
Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including
fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the
Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the
Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the
Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any
renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to,
Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if
not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make
payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied
to restoration or repair of the damaged Property. If the restoration or repair is economically feasible and Lender's
security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

FHKA  11/96                                    Page 2 of 8

9908739    08/30/1999 03:07P    3 of    8
Martha S Roberts, Henry County Recorder

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.   Charges to Borrower and Protection of Lender's Rights in the Property.  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement.  Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.   Inspection.  Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.   Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03KA. 11/96                                    Page 3 of 8

Page 5 of 27

9908739    09/30/1999 03:07P    4 of    8
Martha E Roberts, Henry County Recorder

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Due and Payable. Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) Due and Payable with Secretary Approval. Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) Notice to Lender. Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) Notice to Secretary and Borrower. Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) Trusts. Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) Mortgage Not Insured. Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. No Deficiency Judgments. Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if this Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall

04XA : 1/98    Page 4 of 8

9900739    08/30/1999 03:07P    5 of   8
Martha S Roberts, Henry County Recorder

be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. Lien Status.

(a) Modification. Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) Tax Deferral Programs. Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) Prior Liens. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. Relationship to Second Security Instrument.

(a) Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) Relationship of First and Second Security Instruments. Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) Effect on Borrower. Where there is no assignment or reimbursement as described in (i)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note, or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

USKA:11/06                    Page 5 of 8

9908739     08/30/1999 03:07P     6 of   8
Martha S Roberts, Henry County Recorder

(d)  No Duty of the Secretary.  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.  Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.  Successors and Assigns Bound; Joint and Several Liability.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.  Borrower's Copy.  Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

19.  Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

08XB : 11A/O                                                    Page 6 of 8

*ЛÓЕ*

9908739    08/30/1999 03:07P       7 of    8
Martha S Roberts, Henry County Recorder

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of          6.4000  % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of   NOVEMBER, 1999      , and on           that day of each succeeding year
☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☒ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above SIXTEEN AND 400/1000                      percent (   16.40000  %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

9908739      08/30/1999 03:07P      8 of      8
Martha S Roberts, Henry County Recorder

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider          [ ] Shared Appreciation Rider          [ ] Planned Unit Development Rider
[ ] Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
KEENE O. ENDERS                                  -Borrower

_____ (Seal)
                                                 -Borrower

─────────────── [Space Below This Line For Acknowledgment] ───────────────

STATE OF ILLINOIS                           HENRY COUNTY SS:

I, James T. Blaendle                        , a Notary Public, certify that
KEENE O. ENDERS

personally known to me to be the same person whose name(s)   IS   subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that   HE   signed and delivered the instrument as
HIS    free and voluntary act, for the uses and purposes therein set forth.

Dated AUGUST 30, 1999                        _____ (Seal)
                                             Name:
                                             Title:

RECORD AND RETURN TO:                        ┌─────────────────────────────┐
SENIOR INCOME REVERSE MORTGAGE CORPORATION   │  OFFICIAL   SEAL            │
130 SOUTH JEFFERSON, LL #100                 │  JAMES T BRAENDLE           │
CHICAGO, ILLINOIS 60661                      │  NOTARY PUBLIC, STATE OF ILLINOIS │
(Recorder's Box #           )                │  MY COMMISSION EXPIRES 4/17/2001 │
                                             └─────────────────────────────┘
This Document Prepared By:
Name:    SENIOR INCOME REVERSE MORTGAGE CORPORATION
Address: 130 SOUTH JEFFERSON, LL #100
         CHICAGO, ILLINOIS 60661

HX0  05/97                                   Page 8 of 8

```
9908741      08/30/1999 03:07P    1 of    8
Martha S Roberts, Henry County Recorder
```

———— [Space Above This Line For Recording Data] ————

**State of Illinois**

FHA Case No.   132-1364585/2SS
132-1364585

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
AUGUST 30, 1999      . The mortgagor is
KEENE O. ENDERS , WIDOWED AND NOT SINCE REMARRIED

whose address is   601 11TH AVENUE,
ORION, ILLINOIS 61273                                   ("Borrower"). This Security Instrument
is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W.,
Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender
is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement
dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by
Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
ONE HUNDRED SEVENTY TWO THOUSAND EIGHT HUNDRED AND 00/100 ———————————————————
———————————————————————————————————————————————————
(U.S. $   172,800.00         ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
DECEMBER 29    , 2068   . For this purpose, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in .  HENRY                        County, Illinois:

12X8 : 11/95                          Page 1 of 8

PARCEL ONE: LOT 1,2,3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4;
LOTS 9, 10, 11, 12, AND 13, EXCEPT THE WEST 25 FEET OF SAID LOT 9,
ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION TO THE
ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS.   PARCEL
TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN
FROM THE EAST LINE THEREOF TO THE WEST LINE OF PARCEL ONE.   PARCEL
THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK
SEVEN.

which has the address of   601 11TH AVENUE

                                          [Street]

ORION                        , ILLINOIS           61273        ("Property Address");

   [City]            [State]              [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security
Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument").
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the
debt evidenced by the Second Note.

   2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents,
flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of
payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the
Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may
require Borrower to pay specified property charges directly to the party owed payment even though Lender pays
other property charges as provided in this Paragraph.

   3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including
fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender.
Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected,
against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by
Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if
not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make
payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to
restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97                                    Page 2 of 8

9908741     08/30/1999 03:07P     8 of    8
Martha S Roberts, Henry County Recorder

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider        [ ] Shared Appreciation Rider       [ ] Planned Unit Development Rider
[ ] Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
KEENE O. ENDERS                              -Borrower

_____ (Seal)
                                             -Borrower

[Space Below This Line For Acknowledgment]

STATE OF   ILLINOIS                                        HENRY  COUNTY SS:

I,  James T. Braendle                                    , a Notary Public, certify that
KEENE O. ENDERS

personally known to me to be the same person whose name(s)  IS    subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that  HE    signed and delivered the instrument as HIS    free and voluntary act, for the uses and purposes therein set forth.

Dated AUGUST 30, 1999                                              (Seal)
                                        Name:
                                        Title:

RECORD AND RETURN TO:
SENIOR INCOME REVERSE MORTGAGE CORPORATION
130 SOUTH JEFFERSON, LL #100
CHICAGO, ILLINOIS 60661
(Recorder's Box # _____ )

```
"OFFICIAL   SEAL"
JAMES T. BRAENDLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/17/2001
```

This Document Prepared By:
Name:     SENIOR INCOME REVERSE MORTGAGE CORPORATION
Address:  130 SOUTH JEFFERSON, EL #100
          CHICAGO, ILLINOIS 6066J

15XB : 05/97                          Page 8 of 8

9908740    08/30/1999 03:07P    1 of    2
Martha S Roberts, Henry County Recorder

## ASSIGNMENT OF MORTGAGE

For value received, SENIOR INCOME REVERSE MORTGAGE CORPORATION, an Illinois corporation, hereby assigns and transfers to WENDOVER FUNDING, INC., all its right, title and interest in a certain mortgage executed by KEENE O. ENDERS, WIDOWED AND NOT SINCE REMARRIED to SENIOR INCOME REVERSE MORTGAGE CORPORATION are bearing the date of        August   30TH      1999        and recorded as Document Number 9908759
signed the 30TH   day of August 1999

Senior Income Reverse Mortgage Corporation

Marc Bontrager    Vice President

STATE OF ILLINOIS )

COUNTY OF COOK ) SS

On this 25TH   day of        AUGUST 1999        before me, the undersigned, a notary public in and for the county and state aforesaid, personally appeared  MARC BONTRAGER  to me personally known, who being duly sworn, did say that he was the Vice President of Senior Income Reverse Mortgage Corporation and that the seal affixed to the  foregoing instrument is the corporate seal of said corporation and that said instrument was signed and sealed on behalf of said corporation by authority of its Board of Directors, and that  acknowledged  the execution  of said  instrument to be the free and voluntary act and deed of, by it voluntary done and executed.

Witness my hand and notorial seal the day and year last above written.

OFFICIAL SEAL
DANIELLE FOX
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-22-2003

This instrument prepared by: Senior Income Reverse Mortgage Corporation, 130 S. Jefferson LL#100, Chicago, IL 60606.

SEE LEGAL DESCRIPTION RIDER ATTACHED HERETO

Page 1 of 2

9908740     08/30/1999 03:07P    2 of    2
Martha S Roberts, Henry County Recorder

# LEGAL DESCRIPTION RIDER

BORROWER:                    KEENE O. ENDERS

PROPERTY ADDRESS:           601 11TH AVENUE, ORION, ILLINOIS 61273

LOAN NUMBER:                ▬▬▬▬▬▬▬▬▬

PARCEL ONE: LOTS 1, 2, 3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4; LOTS 9, 10, 11, 12 AND 13,
EXCEPT THE WEST 25 FEET OF SAID LOT 9, ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION
TO THE ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS.

PARCEL TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN FROM THE EAST
LINE THEREOF TO THE WEST LINE OF PARCEL ONE.

PARCEL THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK SEVEN.

PAGE 2

**ILLINOIS**
COUNTY OF HENRY
POOL NO.
LOAN NO.   (275560 ) [6000040308 FNMA]

Assignment-Interv.-Recorded

PREPARED BY SECURITY
CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
SECURITY CONNECTIONS INC.
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402
PH:(208)528-9895

20-0502492

HENRY COUNTY, IL
BARBARA R. LINK
COUNTY CLERK-RECORDER

RECORDED ON  03-28-2005

DOCUMENT TIME 13:54:35

REC. FEE:  28.00
PAGES: 2

## CORPORATION ASSIGNMENT OF REAL ESTATE MORTGAGE

FOR VALUE RECEIVED, *WENDOVER FINANCIAL SERVICES CORPORATION, A NORTH CAROLINA CORPORATION*

located at *725 NORTH REGIONAL ROAD, GREENSBORO, NC 27409*
hereby grants, assigns, and transfers to *FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A DELAWARE CORPORATION*

located at *353 SACRAMENTO STREET, SUITE 900, SAN FRANCISCO, CA  94111*

all the rights, title and interest of undersigned in and to that certain
Real Estate Mortgage dated *AUGUST 30, 1999*  , executed by   *KEENE O. ENDERS, WIDOWED AND NOT SINCE REMARRIED*

to *SENIOR INCOME REVERSE MORTGAGE CORPORATION*

and recorded on *AUGUST 30, 1999*  , in liber/cabinet _____ at page(s)/
drawer _____ document/instrument no. *9908739* _____ microfilm
number _____ pin number _____
in the _____ plat of *HENRY* _____ County
Illinois described hereinafter as follows:
*PARCEL ONE: LOT 1,2,3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4; LOTS 9, 10, 11, 12, AND 13, EXCEPT THE WEST 25 FEET OF SAID LOT 9, ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION TO THE ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS. PARCEL TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN FROM THE EAST LINE THEREOF TO THE WEST LINE OF PARCEL ONE. PARCEL THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK SEVEN.*

Property Address:  601 11TH AVE, ORION, IL  61273

Loan No.
J=WN888F.S.00168          F=S.002.00205.9

Page 1 of 2

E

Loan No. (275560 ) [6000040308 FNMA]

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Real Estate Mortgage.
Dated _MARCH 16, 2005_ , but effective _OCTOBER 31, 2000_ .

WENDOVER FINANCIAL SERVICES CORPORATION
FORMERLY KNOWN AS WENDOVER FUNDING, INC.

BY _____
CARLA TENEYCK
ASSISTANT SECRETARY

BY _____

STATE OF _IDAHO_ )
)
COUNTY OF _BONNEVILLE_ )

On _MARCH 16, 2005_ , before me _CAROL LEE_ personally
appeared _CARLA TENEYCK_ and _____
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) who executed the within instrument as _____
_ASSISTANT SECRETARY_ and _____
_____ and acknowledged to me the corporation
executed it.

_CAROL LEE_ (COMMISSION EXP. [09-02-09])
Notary public

CAROL LEE
NOTARY PUBLIC
STATE OF IDAHO

PREPARED BY:

KARLEEN MAUGHAN
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

P=S.002.00205.9          J=WN888F.S.00168
C=B.049.0001
(NMRI.IL)                         Page 2 of 2

RECORDING REQUESTED BY:
Financial Freedom Senior Funding Corporation

AND WHEN RECORDED MAIL TO:
Financial Freedom Senior Funding Corporation
353 Sacramento Street
Suite 900
San Francisco, CA 94111
Attention: Nisar Mirza

PREPARED BY: Nisar Mirza
Address: 353 Sacramento Street
            San Francisco, CA 94111
Telephone Number: (415) 955-4833

FHA Loan Number: 1321364585

```
20-0707484

       HENRY COUNTY, IL
      BARBARA M. LINK
COUNTY CLERK-RECORDER

RECORDED ON   09/04/2007

DOCUMENT TIME  12:19:04PM

 REC. FEE:      31.00
 RHSPS FEE:     10.00
 PAGES:   2
```

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A DELAWARE CORPORATION (herein "Assignor") whose address is 353 SACRAMENTO STREET, SAN FRANCISCO, CA 94111, does hereby grant, sell, assign, transfer and convey, unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT WASHINGTON D.C. (herein, "Assignee"), a certain MORTGAGE dated AUGUST 30, 1999, and executed by KEENE O. ENDERS, WIDOWED AND NOT SINCE REMARRIED, to and in favor of SENIOR INCOME REVERSE MORTGAGE CORPORATION, and recorded on AUGUST 30, 1999, as Instrument Number: 99087739, in HENRY County, State of IL.
SEE ATTACHED LEGAL DESCRIPTION

Property Address: 601 11TH AVENUE ORION, IL 61273
WITHOUT RECOURSE OR WARRANTY, except that the undersigned hereby warrants that: (a) no act or omission of the undersigned has impaired the validity and priority of the said security instruments; (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder; (c) the sum of $115,200.00 together with the interest from the 30th day of August, 1999, at the rate of 6.400%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) the undersigned has a good right to assign the said security and credit instruments."

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of MORTGAGE on August 29, 2007

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION.

By: ROGER STEJSKAL
Title: SENIOR VICE PRESIDENT

STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO
On August 29, 2007, before me, Bella Nazzal a notary public in and for SAN FRANCISCO County, in the State of CALIFORNIA, personally appeared ROGER STEJSKAL, SENIOR VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, C/O 353 SACRAMENTO STREET, SUITE 900, SAN FRANCISCO, CA 94111, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument.
WITNESS my hand and official seal

Signature

```
       BELLA NAZZAL
      COMM. # 1553650
   NOTARY PUBLIC-CALIFORNIA
     SAN FRANCISCO COUNTY
   COMM. EXP. FEB. 16, 2009
```

Illinois described hereinafter as follows:
PARCEL ONE: LOT 1,2,3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4; LOTS 9, 10, 11, 12, AND 13, EXCEPT THE WEST 25 FEET OF SAID LOT 9, ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION TO THE ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS. PARCEL TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN FROM THE EAST LINE THEREOF TO THE WEST LINE OF PARCEL ONE. PARCEL THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK SEVEN.

Property Address:    601 11TH AVE, ORION, IL   61273

HENRY COUNTY IL        20-0707484      PAGE 2 OF 2

RECORDING REQUESTED BY:
Financial Freedom Senior Funding Corporation

AND WHEN RECORDED MAIL TO:
Financial Freedom Senior Funding Corporation
353 Sacramento Street
Suite 900
San Francisco, CA 94111
Attention: Nisar Mirza

PREPARED BY: Nisar Mirza
Address: 353 Sacramento Street
    San Francisco, CA 94111
Telephone Number: (415) 955-4833

20-0707484

HENRY COUNTY, IL
BARBARA M. LINK
COUNTY CLERK-RECORDER

RECORDED ON  09/04/2007

DOCUMENT TIME  12:19:04PM

REC. FEE:    31.00
RHSPS FEE:   10.00
PAGES:    2

FHA Loan Number: 1321364585

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A DELAWARE CORPORATION (herein "Assignor") whose address is 353 SACRAMENTO STREET, SAN FRANCISCO, CA 94111, does hereby grant, sell, assign, transfer and convey, unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT WASHINGTON D.C. (herein, "Assignee"), a certain MORTGAGE dated AUGUST 30, 1999, and executed by KEENE O. ENDERS, WIDOWED AND NOT SINCE REMARRIED, to and in favor of SENIOR INCOME REVERSE MORTGAGE CORPORATION, and recorded on AUGUST 30, 1999, as Instrument Number: 9908739; in HENRY County, State of IL.
SEE ATTACHED LEGAL DESCRPTION

Property Address: 601 11TH AVENUE ORION, IL 61273
WITHOUT RECOURSE OR WARRANTY, except that the undersigned hereby warrants that: (a) no act or omission of the undersigned has impaired the validity and priority of the said security instruments; (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder; (c) the sum of $115,200.00 together with the interest from the 30th day of August, 1999, at the rate of 6.400%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) the undersigned has a good right to assign the said security and credit instruments."

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of MORTGAGE on August 29, 2007

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION.

By: ROGER STEJSKAL
Title: SENIOR VICE-PRESIDENT

STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO
On August 29, 2007, before me, Bella Nazzal  a notary public in and for SAN FRANCISCO County, in the State of CALIFORNIA, personally  appeared  ROGER  STEJSKAL,  SENIOR  VICE  PRESIDENT  of  FINANCIAL  FREEDOM  SENIOR  FUNDING CORPORATION, C/O 353 SACRAMENTO STREET, SUITE 900, SAN FRANCISCO, CA 94111, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument:.
WITNESS my hand and official seal

Signature

BELLA NAZZAL
COMM. # 1555630
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. FEB. 18, 2009

F

Illinois described hereinafter as follows:

PARCEL ONE: LOT 1,2,3, AND 4, EXCEPT THE WEST 25 FEET OF SAID LOT 4; LOTS 9, 10, 11, 12, AND 13, EXCEPT THE WEST 25 FEET OF SAID LOT 9, ALL IN BLOCK SEVEN OF LLOYD, HIGGINS AND TREGO'S ADDITION TO THE ORIGINAL TOWN, NOW VILLAGE, OF ORION, HENRY COUNTY, ILLINOIS. PARCEL TWO: THE VACATED ALLEY RUNNING EAST AND WEST THROUGH SAID BLOCK SEVEN FROM THE EAST LINE THEREOF TO THE WEST LINE OF PARCEL ONE. PARCEL THREE: THE WEST HALF OF VACATED SEVENTH STREET ADJOINING SAID BLOCK SEVEN.

Property Address:   601 11TH AVE, ORION, IL  61273



# ADJUSTABLE RATE SECOND NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 132-1364585/255
132-1364585

AUGUST 30      , 1999

601 11TH AVENUE, ORION, ILLINOIS 61273

[Property Address]

### 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated      AUGUST 30, 1999        ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on     DECEMBER 29       ,  2068   . Interest will be charged on unpaid principal at the rate of      SIX AND 400/1000                    percent (      6.4000 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or "Second Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

### 4. MANNER OF PAYMENT

(A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

(B) Place
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

(C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

### 5. INTEREST RATE CHANGES

(A) Change Date
The interest rate may change on the first day of     NOVEMBER, 1999           , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

(C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of   ONE AND 200/1000   percentage points (   1.20000%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above     SIXTEEN AND 400/1000    percent (    16.40000 %).

(E) Notice of Changes
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

 

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or at any other address designated by the Secretary.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO FIRST NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

**(C) Notice of Interest Rate Adjustments**

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
S/ KEENE O. ENDERS                          -Borrower

_____ (Seal)
                                            -Borrower

35XA: 11/06                    Page 3 of 3

# ROCK ISLAND COUNTY - LOCAL REGISTRAR
## ROCK ISLAND, ILLINOIS
### MEDICAL CERTIFICATE OF DEATH

**STATE FILE NUMBER:** 2012 0023746
**DATE ISSUED:** 03/28/2012

**DECEDENT'S LEGAL NAME:** IRENE O ENDERS
**SEX:** FEMALE
**DATE OF DEATH:** MARCH 27, 2012

**COUNTY OF DEATH:** ROCK ISLAND
**AGE AT LAST BIRTHDAY:** 93 YEARS
**DATE OF BIRTH:** DECEMBER 29, 1918

**CITY OR TOWN:** EAST MOLINE
**HOSPITAL OR OTHER INSTITUTION NAME:** HOPE CREEK CARE CENTER

**PLACE OF DEATH:** NURSING HOME / LONG TERM CARE FACILITY

**RESIDENCE:** IOWA USA, MI.
**SOCIAL SECURITY NUMBER:** [redacted]
**STATUS AT TIME OF DEATH:** WIDOWED
**SURVIVING SPOUSE/CIVIL UNION PARTNER'S NAME:**
**EVER IN U.S. ARMED FORCES:** YES

**RESIDENCE STREET:** 207 14TH AVENUE
**APT NO:**
**CITY OR TOWN:** ORION
**INSIDE CITY LIMITS:** YES

**COUNTY:** HENRY
**STATE:** IL
**ZIP CODE:** 61273
**FATHER'S/PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION:** OTIS ENDERS
**MOTHER'S/PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION:** ETHEL KEENE

**INFORMANT'S NAME:** DAVID ENDERS
**RELATION:** SON
**MAILING ADDRESS:** [redacted] AVENUE, ORION, IL 61273

**METHOD OF DISPOSITION:** BURIAL
**PLACE OF DISPOSITION:** ROCK ISLAND NATIONAL CEMETERY
**LOCATION - CITY OR TOWN AND STATE:** ROCK ISLAND, IL
**DATE OF DISPOSITION:** APRIL 02, 2012

**FUNERAL HOME:** KIRK-HUGGINS AND ESTERDAHL FUNERAL HOME LTD, 103 14TH STREET, ORION, IL 61273

**FUNERAL DIRECTOR'S NAME:** SANDRA C BINGMAN
**FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER:** 034012172

**LOCAL REGISTRAR'S NAME:** WENDY S. TRUTE
**DATE FILED WITH LOCAL REGISTRAR:** MARCH 29, 2012

**CAUSE OF DEATH — PART I:** CONGESTIVE HEART FAILURE

**PART II OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in PART I:**

**WAS AN AUTOPSY PERFORMED:** NO
**WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH:** N/A
**MANNER OF DEATH:** NATURAL

**FEMALE PREGNANCY STATUS:** NOT APPLICABLE

**DATE OF INJURY:**
**TIME OF INJURY:**
**PLACE OF INJURY:**
**INJURY AT WORK:**

**LOCATION OF INJURY:**

**DESCRIBE HOW INJURY OCCURRED:**

**IF TRANSPORTATION INJURY, SPECIFY:**

**TITLE OF DECEASED:** YES
**DATE LAST SEEN ALIVE:** JANUARY 05, 2012
**WAS MEDICAL EXAMINER OR CORONER CONTACTED:** YES
**DATE PRONOUNCED:**
**TIME OF DEATH:** 09:30 PM

**CERTIFIER:** PHYSICIAN
**DATE CERTIFIED:** MARCH 28, 2012

**NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH:** ACE J THOMAS, 450 30TH AVENUE, MOLINE, ILLINOIS 61265
**PHYSICIAN'S LICENSE NUMBER:** 036-068970

This is to certify that this is a true and correct copy from the official death record filed with the Illinois Department of Public Health.

*Wendy S. Trute*

Wendy S. Trute, MPH
Registrar

COUNTY OF ROCK ISLAND
DEPT. OF PUBLIC HEALTH
STATE OF ILLINOIS

WARNING: ALTERATION OF OR ERASURE VOIDS THIS CERTIFICATE





CERTIFIED MAIL – RETURN RECEIPT REQUESTED

**NOTICE OF INTENT TO FORECLOSE**
**AND ACCEDLERATE MORTGAGE BALANCE**

October 27, 2017

ESTATE OF KEENE ENDERS
601 11TH AVENUE
COLONA, IL 61241

**FHA CASE NUMBER:**  ███████████
**AMOUNT OF THE DEBT**:   $167,528.62
**PAST DUE AMOUNT**:   $167,528.62
**NAME OF THE CREDITOR**: US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Dear THE ESTATE OF KEENE ENDERS,

The Secretary of the United States Department of Housing and Urban Development is the holder of the first mortgage and note on the above premises.

As of the date of the notice, THE MORTGAGE IS IN DEFAULT STATUS due to violation of (9)(a)(i):

**A Borrower dies and the Property is not the principal residence of at least one surviving Borrower.**

The amount required to pay off the outstanding balance in full by **NOVEMBER 26, 2017** is **$168,357.81**. This payment must be in the form of a cashier's check or certified check made payable to the Secretary of Housing and Urban Development (HUD).

Unless the debtor, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector or collection agency. If the debtor notifies the debt collector or collection agency in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector or collection agency will obtain verification of the debt or a copy of a judgment against the debtor and a copy of the verification or judgment will be mailed to the debtor by the debt collector or collection agency.

All funds MUST BE RECEIVED not later than THIRTY (30) DAYS from the date of this letter, and must be forwarded to:

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
2401 NW 23RD STREET, SUITE 1A1
OKLAHOMA CITY, OK  73107
ATTN:  FORECLOSURE DEPARTMENT

If you do not pay the amount specified in paragraph 2 WITHIN 30 Days from the date of this letter or tender a deed-in-lieu of foreclosure as noted in paragraph 4 below, we will accelerate the mortgage obligation






(declare the entire mortgage due and payable immediately). We will do this without further demand and instruct our attorney to start foreclosure proceedings

We will consider accepting a deed-in-lieu of foreclosure provided the property is free or can be freed of any liens or encumbrances other than the Secretary-held mortgage.

It is essential that you contact me directly at (877) 622-8525, should you have any questions or for additional counseling assistance.

In addition and if you wish, the Department of Housing and Urban Development offers free counseling through approved counseling agencies. The counseling agencies offer services such as budget management, debt management, and related counseling services. You may take advantage of this service anytime during the entire term of the mortgage. For housing counseling assistance call 1.800.569.4287.

Sincerely,


HECM Housing Counselor
NOVAD Management Consulting

*Esta Carta es muy mportante, si no entiende el contenido de la misma, favor de obtener una traduccion lo antes possible. Para su conveniencia, nuestros consejeros ofrecen sus sericios en Enpanol y con gusto le pueden asistir.*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

E-FILED
Tuesday, 23 January, 2018 03:55:17 PM
Clerk, U.S. District Court, ILCD

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Estate of Keene O. Enders, Wilfred W. Enders, David K. Enders, Paul Barnes, Helen Barnes |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant Henry |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Kimberly A. Klein, Assistant U.S. Attorney, 211 Fulton St., Suite 400, Peoria, IL 61602 (309) 671-7050 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury – | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine     Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product     Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury –     Product Liability | Leave Act | | Act |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities –   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities –   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee – | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
168,541.79

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/23/2018 | s/Kimberly A. Klein, Assistant U.S. Attorney |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.